<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Action No. 22-852 (SDW) |
| v. | **OPINION** |
| JOHN JHONG, | June 30, 2025 |
| Defendant. | |

**WIGENTON**, District Judge.

Before this Court are *pro se* Defendant John Jhong's ("Defendant") Motions for Compassionate Release seeking a reduction of his sentence to time served under the First Step Act, 18 U.S.C. § 3582(c)(1)(A). (D.E. 54, 57, 61, 70 ("Mots.")).[1]  This opinion is issued without oral argument pursuant to Rule 78 and Local Rule 78.1.  For the reasons stated herein, Defendant's Motions are **DENIED.**

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Criminal Proceedings

On December 22, 2022, Defendant pleaded guilty to a three-count Information charging him with bank fraud in violation of 18 U.S.C. §§ 1344(2) and 2 (Count One); money laundering in violation of 18 U.S.C. §§ 1957 and 2 (Count Two); and misuse of a social security number in

---

[1] Given that D.E. 52 and D.E. 70 are substantially the same, hereinafter this Court refers only to D.E. 70. Similarly, because D.E. 57 and D.E. 61-1 are substantially the same, this Court's references to D.E. 61-1 encompass and address the arguments made in D.E. 57.

violation of 42 U.S.C. § 408(a)(7)(B) and 18 U.S.C. § 2 (Count Three).  (D.E. 34.)  On November 15, 2023, Defendant was sentenced to thirty-six months of imprisonment on each of the three counts, to be served concurrently, and three years of supervised release.  (D.E. 49.)  In addition, Defendant was ordered to pay $2,127,390.91 in restitution.  (D.E. 48 at 4.)  Defendant was initially incarcerated at the United States Penitentiary Canaan ("USP Canaan") and was later transferred to the Metropolitan Detention Center in Brooklyn, New York ("Brooklyn MDC").[2]  (D.E. 70.)

On February 2, 2024, Defendant submitted a compassionate release application to USP Canaan's warden; the application was denied on February 14, 2024.  (D.E. 63 at 5.)  Consistent with the First Step Act's ("FSA") administrative exhaustion requirement, more than thirty days passed between Defendant's request to the warden and his first motion for compassionate release before this Court on April 4, 2024 ("First Motion").  (D.E. 52.)  Defendant later filed an additional two motions for compassionate release on June 18, 2024  (D.E. 57 ("Second Motion")), and on August 7, 2024  (D.E. 61 ("Third Motion")).  The Government filed its opposition on August 8, 2024.  (D.E. 63.)  Defendant was then transferred to the Brooklyn MDC on February 2, 2025.  Subsequently, Defendant moved for emergency compassionate release once again on April 1, 2025  (D.E. 70 ("Fourth Motion")).

In addition to his motions for compassionate release, Defendant filed a Motion challenging the restitution portion of this Court's Final Judgment, in which he argues that the restitution amount he owes was miscalculated.  (D.E. 59.)  Specifically, Defendant contends that he owes $1,887,256.09, rather than the $2,127,391.00 he was ordered to pay.  (*Id.* at 3.)

## II.    LEGAL STANDARD

---

[2] The Federal Bureau of Prisons' Inmate Locator website indicates Defendant is currently located at the Loretto Federal Correctional Institution.  Notwithstanding Defendant's subsequent transfer, this Court addresses Defendant's Motions.

Although a district court generally has limited authority to modify a federally imposed sentence once it commences, *see Dillon v. United States*, 560 US. 817, 824–25 (2010), the FSA permits district courts to grant compassionate release where there exist "extraordinary and compelling reasons" to reduce a sentence. 18 U.S.C. § 3582(c)(1)(A)(i). Under the FSA, "a defendant seeking a reduction in his term of imprisonment bears the burden of establishing both that he has satisfied (1) the procedural prerequisites for judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." *United States v. Epstein*, No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020). After finding that procedural prerequisites have been satisfied, a court may reduce an inmate's sentence pursuant to the FSA "if the court finds that the sentence reduction is (1) warranted by 'extraordinary and compelling reasons'; (2) 'consistent with applicable policy statements issued by the Sentencing Commission'; and (3) supported by the traditional sentencing factors under 18 U.S.C. § 3553, to the extent they are applicable." *United States v. Andrews*, 12 F.4th 255, 258 (3d Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)).

## III.  DISCUSSION

Throughout his Motions, Defendant argues that his desire to care for his elderly father, his chronic medical conditions (including heart disease, diabetes, and sleep apnea), and his rehabilitation efforts while incarcerated present "extraordinary and compelling" circumstances that warrant a reduction of his sentence to time served. This Court concludes that none of Defendant's proffered reasons constitute extraordinary and compelling circumstances.

While Defendant was his father's primary caretaker prior to his incarceration, at no point does Defendant provide any evidence that he was his father's *only* caretaker. Furthermore, Defendant has not persuaded this Court that he has received unsatisfactory care while at Brooklyn

MDC. Although Defendant has been diagnosed with multiple serious conditions, Defendant does not allege that he is incapable of taking care of himself or that he suffers from a terminal illness. Finally, Defendant's efforts at education and rehabilitation, while commendable, do not justify a reduction of sentence. Defendant's Motions are **DENIED**.[3]

### A. Extraordinary and Compelling Reasons

When determining whether Defendant's reasons rise to the level of "extraordinary and compelling," a district court may consider the "text, dictionary definitions, and the policy statement" issued by the United States Sentencing Comission to "give shape to this otherwise amorphous phrase." *See Andrews*, 12 F.4th at 260. The relevant policy statement ("Policy Statement") provides six categories of circumstances which may be extraordinary and compelling, including: medical circumstances, family circumstances, and "other." U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") §§ 1B1.13(b)(1), (3) & (5) (U.S. SENT'G COMM'N 2023). Although the Policy Statement is not binding for prisoner-initiated FSA cases in the Third Circuit, it "still sheds light on the meaning of extraordinary and compelling reasons . . . 'guid[ing] discretion without being conclusive.'" *Andrews*, 12 F.4th at 260 (quoting *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

---

[3] USP Canaan received Defendant's request for compassionate release on February 2, 2024, and did not respond or file a motion on Defendant's behalf. (D.E. 63 at 5.) Defendant properly waited more than thirty days after the warden received his request to file his first Motion. (*Id.*) Defendant was then transferred to the Brooklyn MDC. (D.E. 70-1 at 1.) There is no evidence in the record that Defendant made any request for compassionate release at Brooklyn MDC. For this reason alone, Defendant's Motions are moot—because he is no longer at USP Canaan or the Brooklyn MDC—and his Fourth Motion is also deniable because Defendant has failed to exhaust the First Step Act's procedural prerequisites. 18 U.S.C. § 3582(c)(1)(A). Furthermore, in the Fourth Motion, Defendant describes events that occurred while he was incarcerated at USP Canaan but does not include any evidence suggesting that the Brooklyn MDC was ill-equipped to treat his medical conditions properly. Even if Defendant remedied these defects in his most recent motion, his failure to demonstrate "extraordinary and compelling reasons" precludes a sentence reduction under the FSA.

Here, Defendant argues that his need to care for his elderly father and medical conditions constitutite extraordinary and compelling reasons.  (D.E. 61-1 at 4; D.E. 61-2 at 9; D.E. 70 at 2–6.)  This Court considers each of these reasons in turn.

### i.    Need to Care for Defendant's Father

Defendant argues that his need to care for his elderly father presents an "extraordinary circumstance."  (D.E. 70 at 1.)  Defendant notes that he was the primary caregiver for his parents prior to his incarceration.  (*Id.*)  Defendant is concerned that his ninety-five-year-old father, who is currently hospitalized, is nearing the end of his life, and wishes to "see him one last time to say [Defendant's] goodbyes."[4] (*Id.*)  However, in a previous filing, Defendant stated that his father passed "[i]n or about late March of 2024 . . . [and Defendant] was not able to go to the funeral and memorial services."  (D.E. 61-2 at 7.)  Based on his filings, this Court cannot determine whether Defendant's father is alive today.

The Policy Statement lists several examples of family circumstances that may be extraordinary and compelling, including "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent."  U.S.S.G. § 1B1.13(b)(3)(C).  However, courts in the Third Circuit have generally not found extraordinary and compelling reasons where the defendant fails to establish that he or she is the sole caregiver.  *See, e.g.*, *United States v. Coles*, No. 14-496-3, 2021 WL 1210109, at *3 (E.D. Pa. March 31, 2021) (denying the defendant's motion for compassionate release because he failed to demonstrate that his sixty-five-year-old mother required "immediate care" and that he was the only suitable caregiver), *aff'd on other grounds* No. 21-1715, 2022 WL 1552123 (3d Cir. May 17, 2022); *United States v. Dunich-*

---

[4] Defendant's mother died on January 19, 2024—within the first month of Defendant's incarceration—and his concern appears to be at least partially motivated by the fact that USP Canaan did not grant his request to attend her funeral proceedings.

*Kolb*, No. 14-150, 2022 WL 580919, at *8 (D.N.J. Feb. 14, 2022) ("One common thread, whether relief is granted or denied, is the requirement that the prisoner be the *only* person available to provide care to a seriously ill relative.").

Where a defendant does not produce sufficient evidence that they are the sole caregiver or where evidence exists that the defendant is not the sole caregiver, courts typically deny relief. *See, e.g.*, *Coles*, 2021 WL 1210109 at *3; *United States v. Tobolsky*, No. 21-00303, 2024 WL 323476, at *3 (D.N.J. Jan 29, 2024) (rejecting the defendant's claim that he was his mother's only caregiver given the lack of supporting evidence and an e-mail in which the defendant's father acknowledged the availability of other caregivers); *United States v. Babbs*, No. 15-195, 2023 WL 4686323, at *5 (D.N.J. July 21, 2023) (finding the record belied the defendant's assertion that he was the only available caregiver where the defendant himself admitted his siblings maintained active relationships with their mother and the defendant's aunt resided in New Jersey). "It is not uncommon . . . for a criminal sentence to impose burdens, sometimes severe ones, on family members." *Dunich-Kolb*, 2022 WL 580919 at *8. Yet, "[t]he impact on family members is an inherent feature of any term of incarceration." *United States v. Cromwell*, No. 19-0057, 2021 WL 3561244, at *3 (D.N.J. Aug. 12, 2021).

Assuming that Defendant's father is in fact alive, Defendant has not established that he is the only caregiver for his father. In his four Motions for Compassionate Release, Defendant reminds this Court of what it thoroughly considered at sentencing after careful review of the presentencing report: Defendant was the primary caretaker for both of his parents prior to his incarceration. (D.E. 70 at 2; D.E. 61-2 at 7.) But Defendant has offered no evidence to establish that Defendant is the *sole* caretaker as required under U.S.S.G. § 1B1.13(b)(3)(C). In fact, Defendant has three siblings—two of whom live in New Jersey. (D.E. 46 at 16.) Defendant has

6

not shown that his other siblings are unable or unwilling to care for Defendant's father. Therefore, Defendant's desire to provide care to his father is not an extraordinary and compelling reason.

More troublingly, Defendant's indicates in his Third Motion that his father died, but he argues in his Fourth Motion—filed eight months later—that Defendant's need to care for his father is an "extraordinary circumstance" justifying compassionate release. (D.E. 70 at 2.) The status of Defendant's father is inscrutable to this Court, but either way, the surrounding circumstances do not warrant a reduction of Defendant's sentence.

### ii.    Defendant's Medical Conditions

This Court first observes that Defendant was transferred from USP Canaan to the Brooklyn MDC on February 2, 2025. (D.E. 70.) Defendant has failed to demonstrate that he exhausted administrative remedies *before* filing a new motion for compassionate relese, which "presents a glaring roadblock foreclosing compassionate release." *United States v. Raia*, 965 F.3d 594, 595 (3d Cir. 2020); *Epstein*, 2020 WL 1808616, at *2; *see also* 18 U.S.C § 3582(c)(1)(A). While Defendant submitted a request for USP Canaan to file a motion for compassionate release on his behalf on February 2, 2024, (D.E. 63 at 5), he has not presented any evidence that he renewed this request at the Brooklyn MDC. Indeed, there is no evidence that the Brooklyn MDC knew of Defendant's healthcare concerns at all. This Circuit has previously held that "'strict compliance' with the exhaustion requirement . . . is critical," *United States v. Caraballo*, No. 14-0255, 2022 WL 60697, at *2 (D.N.J. Jan. 6, 2022), *aff'd* 2022 WL 3754618 (3d Cir. Aug. 20, 2022), and Defendant is no exception. Defendant's Fourth Motion is deniable on this basis alone.

Crucially, Defendant does not cite a single instance suggesting any failure on the part of Brooklyn MDC to treat his medical conditions. Defendant's Fourth Motion, which refers only to an unidentified "prison [that is] not able to provide the required medical services," describes

alleged events that occurred between January 12, 2024, and January 24, 2024—over one year prior to Defendant's transfer to the Brooklyn MDC.  (D.E. 70.)  Not only did Defendant fail to inform Brooklyn MDC of his concern for his medical conditions, but his Fourth Motion also refers exclusively to events that transpired while he was under USP Canaan's care.  In other words, there is no evidence that Defendant has any objection to the care that he has received since his transfer on February 2, 2025.  To the extent that Defendant was subjected to substandard care at the USP Canaan, his objections are moot because he is no longer there.  The same rationale applies to any objections Defendant could have made concerning his time at the Brooklyn MDC.

Notwithstanding the above-referenced defects in the Fourth Motion, Defendant fails to provide adequate support for his argument that his medical conditions are extraordinary and compelling.  A medical condition is extraordinary and compelling where the defendant is suffering from a terminal illness or is suffering from a condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. §§ 1B1.13(b)(1)(A), (B).  Here, Defendant does not allege that his medical conditions are terminal or that they diminish his ability to provide self-care.  (D.E. 61-2 at 2–9; D.E. 70 at 3–6.)  The very existence of a chronic condition is not, by itself, an extraordinary or compelling reason.  *See United States v. Coleman*, 848 F. App'x 65, 66 (3d Cir. 2021) (upholding denial of release to defendant with asthma, high blood pressure, and HIV because his conditions were sufficiently treated while incarcerated).  Courts have held that when a defendant is unable to show that he or she will not recover from an illness or show that an illness substantially decreases his or her ability to provide self-care within a correctional environment, extraordinary and compelling circumstances do not exist.  *See, e.g.*, *United States v. China*, No. 15-0203, 2024 WL 1715329, at *3 (D.N.J. Apr. 22, 2024) (holding that the defendant's obesity

8

and Type Two diabetes were insufficient to find an extraordinary and compelling reason for compassionate release, particularly when these conditions were being treated).  Defendant himself acknowledges that his "pre-existing [sic] medical conditions," including heart disease, diabetes, and sleep apnea, were included in the presentence report.  (D.E. at 3–4.)  This Court carefully considered Defendant's preexisting conditions during the course of sentencing.  Their continued existence is neither extraordinary nor compelling.

Defendant also fails to carry his burden of demonstrating that, prior to his transfer, USP Canaan did not provide adequate medical care.  Defendant disputes the extent of his treatment, but his medical records tell a different story.  In fact, while at USP Canaan, Defendant underwent numerous examinations, assessments, and consultations, and received his necessary prescriptions. (D.E. 63-1.)  When Defendant complained of chest pain, Health Services immediately sent him to the emergency room due to his "extensive cardiac history," (*id.* at 82, 86), where Defendant received a minimally invasive heart catheterization, (*id.* at 76), not a forced "emergency heart surgery," as Defendant describes it, (D.E. 70 at 6).  Defendant reported to Health Services that he was "doing well" and "feeling better" when he returned to USP Canaan and denied experiencing any adverse symptoms or side-effects at his follow-up appointment six weeks later.  (D.E. 63-1 at 70, 255.)  Beyond his own allegations, Defendant has provided no evidence of inadequate care or of USP Canaan's inability to treat his diagnosed conditions while he was incarcerated there.

### iii.    Other Compelling Reasons

Finally, Defendant cites his remorse and his participation in educational services in support of his motion for compassionate release.  (D.E. 61-1 at 14; D.E. 70 at 7.)  Defendant "is trying his best to take advantage of any and all programs and also volunteering to help others."  (*Id.*)  While Defendant's behavior, efforts at rehabilitation, and self-improvement are encouraging, defendants

are expected to comply in this regard.  Rehabilitation efforts themselves are not an extraordinary and compelling circumstance.  28 U.S.C. § 994(t).  This is especially true when, as here, a court finds no independent extraordinary and compelling reasons.  *United States v. Bledsoe*, No. 22-2022, 2022 WL 3536493, at *3–4 (3d Cir. Aug. 18, 2022) ("[C]laimed efforts in furtherance of rehabilitation, while commendable, are 'expected'; they are, standing alone, neither 'extraordinary' nor 'compelling' for purposes of the compassionate-release standard.") (internal citation omitted).

### B.  § 3553(a) Factors

Even where extraordinary and compelling reasons are established, this Court must consider the § 3553(a) factors to the extent that they are applicable.  18 U.S.C. § 3582(c); 18 U.S.C. § 3553(a).  Despite not finding any extraordinary and compelling factors, this Court will briefly review the § 3553(a) factors.[5]

The seriousness of the offense, respect for law, and just punishment all weigh against a reduction in sentence.  These factors were covered thoroughly at sentencing, where this Court recognized that Defendant's conduct was "completely . . . out of the bounds of who [he] appear[s] to be as an individual and . . . as a citizen in this country." (Sentencing Tr. at 16:22–24.)  This Court emphasized that Defendant's actions were, "without question . . . criminal conduct . . . [that] was extreme in the amount of money that was taken from the Government, and others." (*Id.* at 4–7.)  Defendant provides no reason why the offense should be interpreted as less severe today, nor does he point to any case that reduced a similarly situated defendant's sentence. Accordingly, this Court will not disturb his sentence.

---

[5] § 3553(a) factors include "'the history and characteristics of the defendant,' and 'the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense[, and] . . . to afford adequate deterrence to criminal conduct.'"  *United States v. Pawlowski*, 967 F.3d 327, 329–30 (3d Cir. 2020) (internal citations omitted) (quoting 18 U.S.C. § 3553).

Finally, reducing Defendant's sentence would not amount to adequate deterrence from criminal conduct. Defendant has served under fifty percent of his three-year sentence, which commenced on January 10, 2025. (D.E. 70 at 1.) Courts have denied compassionate release where it would require "a substantial sentencing reduction." *Pawlowski*, 967 F.3d at 331. Reducing Defendant's sentence to time served would eliminate the remaining half of his sentence that this Court considered necessary at sentencing. This would not serve the goal of deterrence for similar crimes.

After considering the relevant § 3553(a) factors and the entire record, this Court finds that the § 3553(a) factors weigh against granting compassionate release. Even if Defendant could establish extraordinary and compelling reasons, his failure to demonstrate that the § 3553(a) factors weigh in favor of reducing his sentence are detrimental to his request for release.

## IV.    RESTITUTION

Defendant argues that the judgment for the restitution amount of $2,127,391.00 was miscalculated due to an error in the presentence report, which identified his EIDL loan—issued by the U.S. Small Business Administration—amount as $390,034.91. (D.E. 59-1 at 2–3; D.E. 46 at 11.) Defendant alleges that the proper loan amount is $149,900.00, which would subtract $240,134.91 and render the judgment $1,887,256.09. (D.E. 59-1 at 2–3.) Defendant was represented by counsel at sentencing, who explicitly consented to the presentence report's findings—including the amount of restitution owed by Defendant. (Sentencing Tr. at 3:5–10, 20:5–6.) Defendant then signed his plea agreement, (D.E. 38 at 3, 10), and his consent forfeiture judgment, (D.E. 48 at 4, 7), in which he explicitly agreed to pay $2,127,391.00 in restitution. Contrary to his contention that "[a]t relevant times [Defendant] . . . complained of and disputed the dollar amount, yet [sic] it was never corrected," there is no evidence that Defendant objected

11

to his amount owed at any of the numerous opportunities with which he and his counsel were presented. This Court is not persuaded that a reduction in the amount owed is necessary, and Defendant's motion is dismissed accordingly.

**V.      CONCLUSION**

      For the reasons stated above, Defendant's Motion is **DENIED.** An appropriate order follows.

                                           /s/ Susan D. Wigenton
                                  **SUSAN D. WIGENTON, U.S.D.J.**

Orig:  Clerk
cc:     Parties